50 F.3d 114
 Albert TULLOCH, Plaintiff-Appellant,
v.
Thomas A. COUGHLIN III, Corrections Commissioner; Walter R.
Kelly, Superintendent, Attica Correctional
Facility; Joseph Kihl; and M.
Cunningham, Corrections
Sergeant,
Defendants-
Appellees.
 No. 174, Docket 93-2624.
 United States Court of Appeals,
Second Circuit.
 Submitted Sept. 26, 1994.
Decided Feb. 28, 1995.
 
 Albert Tulloch, Fallsburg, NY, pro se.
 G. Oliver Koppell, Albany, NY, Atty. Gen. of State of New York (Peter H. Schiff, Deputy Sol. Gen. of State of New York, Nancy A. Spiegel, Daniel Smirlock, Asst. Attys. Gen., of counsel), for defendants-appellees.
 Before: WINTER, JACOBS, and CABRANES, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 Albert Tulloch, an inmate at the Attica Correctional Facility ("Attica"), appeals pro se from Judge Elfvin's grant of Joseph Kihl's motion to dismiss pursuant to Fed.R.Civ.P. 12(c). The district court held that Kihl has absolute immunity from suits based on claims relating to his role as a prison disciplinary hearing officer. We reverse.
 
 
 2
 On February 24, 1990, a misbehavior report charged Tulloch with assault based on information provided by a confidential informant. On March 2, 1990, Kihl presided over the disciplinary hearing at which the assault charge was sustained. This hearing was a "Tier III" disciplinary hearing, the level for a severe infraction. See Walker v. Bates, 23 F.3d 652, 654 (2d Cir.1994), petition for cert. filed, 63 U.S.L.W. 3092 (U.S. July 25, 1994) (No. 94-158). Kihl imposed a penalty of 180 days in keeplock, a loss of telephone privileges, and a loss of "good time." Kihl's decision was upheld on administrative appeal. Tulloch then initiated a proceeding under Article 78 of the New York Civil Practice Law and Rules that resulted in a stipulation by the parties that Tulloch would receive a new hearing. After that hearing, Tulloch was found not to have committed an infraction.
 
 
 3
 On July 1, 1991, Tulloch initiated the instant action under 42 U.S.C. Sec. 1983, naming Joseph Kihl, inter alia, as a defendant. On August 31, 1993, Judge Elfvin granted Kihl's motion (and that of another defendant) to dismiss pursuant to Fed.R.Civ.P. 12(c) on the ground of absolute immunity.
 
 
 4
 We view the record in the light most favorable to Tulloch because the dismissal was on the pleadings and the burden of demonstrating absolute immunity was on the party asserting that immunity. Antoine v. Byers & Anderson, Inc., --- U.S. ----, ----, & n. 4, 113 S.Ct. 2167, 2169 & n. 4, 124 L.Ed.2d 391 (1993). Kihl serves as a prison disciplinary hearing officer pursuant to the Inmate Hearing Officer Program ("Program"). The Program hires private lawyers to serve as hearing officers at New York Department of Correctional Services ("DOCS") disciplinary hearings. The objective of the Program appears to be to give the hearing officer a measure of independence from prison authorities. Although commenced in 1986, the Program continues to be a "pilot" program. (Our information regarding Program is based in large measure upon Judge Elfvin's opinion in Malinowski v. Kihl, 91-CV-301E, 1993
 
 
 5
 WL 335783, 1993 * 116 U.S.Dist. LEXIS 11945 (W.D.N.Y. Aug. 23, 1993)). The attorneys selected through the Program process are chosen from civil service lists. Kihl receives his remuneration from the Central Office of DOCS, not from any particular penal institution. However, there is no showing that the selection of Kihl as a hearing officer was done through a random process, such as lot or computer-generated random numbers. Rather, the DOCS officials appear to have a degree of control over who is selected. Id. 1993 WL 335783 at * 5 & 6 n. 2, 1993 U.S.Dist. LEXIS 11945 at * 14 & n. 2.
 
 DISCUSSION
 
 6
 Given the litigious nature of prisoners, there is a substantial body of caselaw concerning the proper level of immunity for prison disciplinary hearing officials. In general, while acknowledging the plain fact that such officials face a substantial amount of vexatious and harassing litigation, courts have rejected the contention that these officials should have absolute immunity but rather have afforded them qualified immunity.
 
 
 7
 Absolute immunity confers complete protection from civil suit. In contrast, qualified immunity shields government officials from suit if either the official did not violate a "clearly established" right that a "reasonable person" would have been aware of, or it was objectively reasonable for the official to believe that his actions would not violate a "clearly established" right. Benitez v. Wolff, 985 F.2d 662, 666 (2d Cir.1993); see also Anderson v. Creighton, 483 U.S. 635, 638-39, 107 S.Ct. 3034, 3038-39, 97 L.Ed.2d 523 (1987).
 
 
 8
 Immunity analysis is "functional" and scrutinizes the actual responsibilities of the government official in question in light of six factors. Butz v. Economou, 438 U.S. 478, 512, 98 S.Ct. 2894, 2913-14, 57 L.Ed.2d 895 (1978). These factors are: (i) the necessity for ensuring that the official in question can perform his functions without harassment or intimidation, (ii) the existence of procedural safeguards that might reduce the need to deter unconstitutional conduct with private damage actions, (iii) the level of insulation of the official in question from political influence, (iv) the degree to which the official in question adheres to precedent in resolving controversies, (v) the degree to which the relevant governmental processes are adversarial, and (vi) the extent to which errors in the relevant processes can be corrected through an appellate review mechanism. Cleavinger v. Saxner, 474 U.S. 193, 202, 106 S.Ct. 496, 501, 88 L.Ed.2d 507 (1985); Butz, 438 U.S. at 512, 98 S.Ct. at 2913-14.
 
 
 9
 It is settled that absolute immunity is appropriate for judges in the exercise of their judicial function. See, e.g., Pierson v. Ray, 386 U.S. 547, 553-54, 87 S.Ct. 1213, 1217-18, 18 L.Ed.2d 288 (1967); Fields v. Soloff, 920 F.2d 1114, 1119 (2d Cir.1990). Courts have extended absolute immunity to administrative law judges, see, e.g., Butz, 438 U.S. at 513-14, 98 S.Ct. at 2914-15, and to prosecutors, Imbler v. Pachtman, 424 U.S. 409, 424-26, 96 S.Ct. 984, 992-93, 47 L.Ed.2d 128 (1976).
 
 
 10
 Moreover, the Supreme Court has held that prison officials who function as hearing officers are entitled to qualified immunity. Cleavinger, 474 U.S. at 203-05, 106 S.Ct. at 501-03. We recently reached a similar conclusion with regard to a New York DOCS employee who heard appeals from penalties imposed in prison disciplinary hearings. See Young v. Selsky, 41 F.3d 47 (2d Cir.1994). However, recent district court decisions have held that Kihl enjoys absolute immunity. See Malinowski, 1993 WL 335783, 1993 Dist. LEXIS 11945; Gayle v. Kihl, No. 90-729L (W.D.N.Y. Feb. 19, 1992). These decisions distinguished Cleavinger by focussing on safeguards supposedly created by the Program and afforded by New York Correctional Law.
 
 
 11
 Our application of the Cleavinger factors yields the conclusion that absolute immunity is not appropriate for Kihl. The first Cleavinger factor militates heavily in favor of absolute immunity. Prison disciplinary hearings are often fraught with emotion and ill-will, and prisoners are a group prone to litigation. Such litigation is far from costless. The need to provide defendants with legal representation constitutes a significant drain on penal resources, as does the time and attention such lawsuits demand of the defendants themselves. However, Justice Blackmun's opinion in Cleavinger stated that "any expense of litigation largely is alleviated by the fact that a Government official who finds himself as a defendant in litigation of this kind is often represented, as in this case, by Government counsel." Cleavinger, 474 U.S. at 208, 106 S.Ct. at 504.
 
 
 12
 The second Cleavinger factor--the existence of procedural safeguards--weighs against absolute immunity. Concededly, New York does provide certain procedural safeguards. The inmate has a right to be present and a limited right to present evidence and call witnesses. In addition, New York penal disciplinary procedures are distinguishable from the hearings at issue in Cleavinger in that the proceeding is tape-recorded. However, the function of the prison disciplinary committee is not adjudicative in a paradigmatic sense because there is a lack of procedural formality. For example, many of the procedural safeguards afforded by the Administrative Procedure Act, 5 U.S.C. Sec. 500, et seq., are not available in a prison disciplinary hearing. There is no right to counsel or to cross-examination, and the inmate does not have subpoena power.
 
 
 13
 The third factor, the independence of the government official, also weighs against absolute immunity. Cleavinger involved a hearing officer under the direct supervision of a warden. Cleavinger, 474 U.S. at 204, 106 S.Ct. at 502. In the instant case, it appears that prison authorities have a role in the selection of attorneys as hearing officers and also have the power to discontinue the Program altogether. See Malinowski, 1993 WL 335783 at * 5, 1993 U.S.Dist. LEXIS 11945 at * 15. The DOCS thus has a degree of control over the hearing officers' terms of employment. Kihl thus does not have a level of independence commensurate with that enjoyed by judges or administrative law judges.
 
 
 14
 The fourth Cleavinger factor also suggests that absolute immunity may not be warranted. Precedent is important in disciplinary proceedings to the extent that federal and state law is followed. However, there appear to be no compendiums of the records of disciplinary hearings and appeals for officers to rely on. Therefore, similar factual situations may lead to different results, depending on the hearing officer and other circumstances.
 
 
 15
 The fifth factor, the adversarial nature of the process, is limited. Even if the inmate has a right to consult with other inmates, the absence of counsel to help focus inquiry and present reasoned proofs and arguments precludes the development of a full adversarial process.
 
 
 16
 Our evaluation of the sixth Cleavinger factor--appellate review--also does not support absolute immunity. The results of the disciplinary hearings are correctable upon appeal in the appellate process described in Young v. Selsky, 41 F.3d at 52-54. However, this review does not rise to the thoroughness of the appellate safeguards available in judicial processes in which absolute immunity is typically afforded. Selsky, the sole individual designated to hear appeals from Tier III hearings in the New York prison system, id. at 49, is employed by the correctional system and is not independent of it. Id.
 
 
 17
 On balance, all but one of the Cleavinger factors weigh against absolute immunity, and the existence of the Program and procedures afforded by the New York DOCS do not distinguish this case from Cleavinger.
 
 
 18
 We therefore reverse.