105 F.3d 65
 52 Soc.Sec.Rep.Ser. 568, Medicare & Medicaid Guide
P 45,028
Alexander KOSTOK, individually and on behalf of all others
similarly situated, Plaintiff-Appellant,
v.
Joyce A. THOMAS, Commissioner, Connecticut Department of
Social Services, in her Official Capacity,
Defendant-Appellee.
 No. 408, Docket 96-7450.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 27, 1996.
Decided Jan. 15, 1997.
 
 Catherine E. Cushman, Hartford, CT (Office of Protection and Advocacy for Persons with Disabilities), for Plaintiff-Appellant.
 Hugh Barber, Assistant Attorney General, Hartford, CT (Richard Blumenthal, Attorney General), for Defendant-Appellee.
 Before WALKER, McLAUGHLIN and JACOBS, Circuit Judges.
 JACOBS, Circuit Judge:
 
 
 1
 Plaintiff-Appellant Alexander Kostok is a resident in a nursing home in Connecticut and is entitled to state Medicaid benefits. The United States District Court for the District of Connecticut (Covello, J.) dismissed his claim for injunctive relief to compel the State of Connecticut to furnish him a new wheelchair that is customized to his physical needs and motorized for locomotion and adjustment. After oral argument on the appeal from that dismissal, the defendant Commissioner of the Connecticut Department of Social Services ("the Commissioner") advised this Court that subsequent arrangements to provide the motorized wheelchair have rendered the case moot. For the reasons stated here, we conclude that this appeal is not moot and that the district court's ruling under the Eleventh Amendment cannot be sustained as to Kostok's federal and constitutional claims--the only ground of appeal. We remand for any further proceedings, because, while it is possible that the wheelchair will be supplied without further intervention by the courts, the oversight of the district court may be needed and any motion for attorney's fees will require consideration and decision.
 
 BACKGROUND
 
 2
 Kostok has lived in a skilled nursing facility in Connecticut for about 14 years. He has multiple sclerosis with quadriplegia and spasticity, and requires 24-hour care and assistance in his daily activities. He cannot move his legs, has little or no trunk control, and has minimal movement of his left hand. With the left hand, he operates a 15-year old power wheelchair that he brought with him to the nursing home.
 
 
 3
 Over the last fifteen years, Kostok has gained weight (he is about 6'5"' and 300 lbs.), lost the use of his right hand, lost most of the strength in his left hand, and become subject to severe muscle spasms. Two assessments of his wheelchair in the last two years indicate that its safety and stability are questionable, and that it no longer meets Kostok's physical and medical needs. Because the wheelchair does not support his back or legs properly, Kostok cannot use it for more than three or four hours per day.
 
 
 4
 Under the relevant state rules, a vendor of durable medical supplies must look to the nursing home for payment unless prior authorization from the Department of Social Services for direct payment has been secured. In this case, the nursing home refused to purchase a new wheelchair for Kostok, citing the cost as well as the nursing home's belief that the wheelchair would be deemed specialized equipment for which the home would not receive reimbursement under the Medicaid per diem reimbursement rate. On January 5, 1994, a request for prior authorization for payment of a new custom motorized wheelchair was submitted to the Commissioner on Kostok's behalf. The request was accompanied by a prescription form signed by Kostok's longtime treating physician, as well as by an orthopedic surgeon, an occupational therapist, and a registered nurse. The Commissioner denied the request on the ground that "Connecticut Medicaid does not purchase power wheelchairs for recipients who live in nursing facilities." This denial was based on Medical Services Policy 189 ("Policy 189"), which states that custom wheelchairs that are motorized are not considered medically necessary for patients in skilled nursing facilities. Kostok appealed through the Commissioner's administrative hearing process. The hearing officer found that Kostok had a medical need for a customized wheelchair and a psychosocial need for one that is motorized. (At oral argument, Kostok's counsel explained that motorization is necessary not only for locomotion, but also to configure the angle of the wheelchair in order to relieve pressure in Kostok's legs.) The hearing officer then ordered the Commissioner to authorize payment for a custom wheelchair, but not the power component, which was found to be the responsibility of the nursing home. This left Kostok with sole recourse to the nursing home for the power component, equipment that the nursing home had already--and repeatedly--refused to purchase. The Commissioner took no further action.
 
 
 5
 On November 10, 1994, Kostok filed a complaint in the United States District Court for the District of Connecticut, seeking an injunction against the Commissioner's continued withholding of authorization for the wheelchair and a declaration that Policy 189 violates federal law. The prayer for relief did not seek money damages. Kostok filed an application for a preliminary injunction on April 25, 1995. On August 25, the Commissioner filed a motion to dismiss combined with his opposition to a preliminary injunction. On March 19, 1996, the district court granted the Commissioner's motion to dismiss.
 
 
 6
 In its ruling, the district court held that the Eleventh Amendment bars any claim for damages against state officials in their official capacity. The court recognized that federal courts are not barred from granting prospective injunctive relief against state officials on the basis of federal claims, but nevertheless dismissed Kostok's claim based on two jurisdictional rationales. First, the district court explained that Kostok's complaint alleged a violation of state law--i.e., that the refusal to pay for a motorized wheelchair violated a state regulation--rather than federal law, and was therefore barred because the Eleventh Amendment prohibits suits against state officials on the basis of state claims. Second, the district court held that the complaint sought retroactive relief, and was therefore barred under the doctrine of Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Although Kostok's complaint stated that the wheelchair is a "medically necessary" service under the federal Medicaid Act, the court concluded that the complaint actually sought "to recoup the monetary loss of a past breach of a legal duty" by the Commissioner, which would require the payment of money from the state treasury. The court also dismissed Kostok's claim for declaratory relief, on the ground that a declaratory judgment would potentially open the door to an action for money damages, a claim that is jurisdictionally barred by the Eleventh Amendment.
 
 
 7
 This expedited appeal followed.
 
 
 8
 At oral argument (although not in the state's fifty-page brief), counsel for the Commissioner repeatedly expressed the state's perfect willingness to pay for the wheelchair through the nursing facility rate reimbursement system. Eight times, counsel declared that the state was willing to reimburse the nursing facility for the wheelchair, but that the nursing home simply refused to buy the chair. There is some evidence that the indirect payment mechanism may have inhibited the nursing home from buying the wheelchair and seeking reimbursement, particularly in light of Policy 189, which runs counter to the Commissioner's willingness to pay in this case.
 
 
 9
 After oral argument, the state filed a motion to dismiss the appeal as moot on the ground that the nursing home (having received satisfactory assurances from the state) has at last agreed to advance the cost of the power component of the wheelchair pending reimbursement by the state. The state asks us to dismiss the appeal as moot, without disturbing the district court's judgment. Kostok does not dispute the factual premise of the state's motion, but he opposes the dismissal of the appeal for mootness. We consider the potential mootness a threshold issue, to be reached even before we consider the Eleventh Amendment jurisdictional question.
 
 DISCUSSION
 
 10
 This appeal is not moot. The state's promise to arrange delivery of a suitable wheelchair does not alone moot this appeal.
 
 
 11
 If some impediment arises or some prolonged delay ensues in the delivery of the wheelchair or the reimbursement process--a possibility we do not view as speculative, all things considered--Kostok would be at square one, and might well be precluded from seeking a further remedy. We also note that attorney's fees in this case may be as significant an item as the cost of the wheelchair and motorized component together.
 
 
 12
 As a general matter, the Eleventh Amendment bars suits of any sort against a state in federal court unless the state has consented to be sued or Congress has expressly abrogated the state's immunity.[1] "State participation in [the federal Medicaid] program ... does not in itself constitute waiver...." Yorktown Med. Lab., Inc. v. Perales, 948 F.2d 84, 88 (2d Cir.1991).
 
 
 13
 If an act by a state violates the federal Constitution or federal law, however, then the enforcing state actor loses official immunity: "[t]he state has no power to impart to him any immunity from responsibility to the supreme authority of the United States." Ex parte Young, 209 U.S. 123, 160, 28 S.Ct. 441, 454, 52 L.Ed. 714 (1908); see also Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 102, 104 S.Ct. 900, 909, 79 L.Ed.2d 67 (1984). A challenge under the federal Constitution to a state official's action in enforcing state law is not viewed as an action against the state and is not defeated by Eleventh Amendment immunity. See Green v. Mansour, 474 U.S. 64, 68, 106 S.Ct. 423, 425-26, 88 L.Ed.2d 371 (1985).
 
 
 14
 Kostok's state law claim is barred by the Eleventh Amendment because such a claim cannot be brought against a state even when it has been appended to a federal Constitutional claim. Alliance of Am. Insurers v. Cuomo, 854 F.2d 591, 604-05 (2d Cir.1988). The district court thus properly dismissed that claim. But Kostok's complaint also pleads that the state's policy violates both federal law and the Due Process Clause of the Fourteenth Amendment. Under Ex parte Young, these claims are not barred by the Eleventh Amendment.
 
 
 15
 The Commissioner argues that Kostok has alleged no conflict between the state's policies and the overriding requirements of federal law. That is flatly wrong. Although the failure of a state authority to comply with state regulations does not, as a facial matter, implicate an interest secured by federal law, a claim is properly asserted in federal court where there are "allegations of a specific conflict between a state plan or practice on the one hand and a federal mandate on the other." Oberlander v. Perales, 740 F.2d 116, 119 (2d Cir.1984) (citations omitted). The Commissioner focuses on the portions of Kostok's complaint alleging that the denial of direct payment is incompatible with state law--even though the dismissal of Kostok's state law claim is not being appealed--and ignores the allegations that the policy violates both the Due Process Clause and the federal Medicaid statute itself. See Mont v. Heintz, 849 F.2d 704, 709-10 (2d Cir.1988) (where "the allegation is that the state practice violates federal law," the Eleventh Amendment does not bar the claim) (citing cases).
 
 
 16
 Although the Eleventh Amendment does not altogether bar suits against states, the range of available remedies is narrow. Any claim for retroactive monetary relief, under any name, is barred. See, e.g., United States v. Yonkers Bd. of Educ., 893 F.2d 498, 503 (2d Cir.1990); County of Oneida v. Oneida Indian Nation, 470 U.S. 226, 251-52, 105 S.Ct. 1245, 1260-61, 84 L.Ed.2d 169 (1985). When state funds are awarded to compensate for past wrongdoing by state officials, or to deter future wrongdoing, the Eleventh Amendment bars the payment as retrospective. Edelman v. Jordan, 415 U.S. 651, 668-69, 677, 94 S.Ct. 1347, 1358-59, 39 L.Ed.2d 662 (1974); Green v. Mansour, 474 U.S. at 68, 106 S.Ct. at 425-26. A federal court may grant prospective injunctive relief only to stop or prevent acts that are illegal under federal law. See Edelman, 415 U.S. at 677, 94 S.Ct. at 1362-63. The fact that an expenditure of public funds may be incidentally necessary does not alone render relief retroactive: "[s]uch an ancillary effect on the state treasury is a permissible and often an inevitable consequence...." Id. at 668, 94 S.Ct. at 1358.
 
 
 17
 Kostok asserts that the district court incorrectly characterized his prayer for relief as a request for monetary damages masquerading as a claim for prospective injunctive relief. The court's finding that injunctive relief would effect the recoupment of monetary loss, is incorrect. In Edelman, 415 U.S. at 659, 94 S.Ct. at 1354, the Supreme Court reversed a grant of retroactive benefits; and in Yorktown, 948 F.2d at 87, we rejected the argument that the return of monies paid represented prospective injunctive relief rather than damages. In contrast to these cases, Kostok seeks relief that is truly prospective: a wheelchair from this time forward. The relief sought cannot be deemed retroactive simply because it costs money. See Edelman, 415 U.S. at 668, 94 S.Ct. at 1358. Kostok does not seek compensation for any suffering caused by his use of an unsuitable wheelchair; he simply seeks the suitable wheelchair now.
 
 CONCLUSION
 
 18
 Because some of Kostok's claims are pleaded under federal law and the United States Constitution, and seek prospective injunctive relief, they are not barred by the Eleventh Amendment. We therefore vacate the judgment in part, and remand for consideration of the mootness question if and when Mr. Kostok receives his wheelchair, and for any other proceedings consistent with this opinion, including any claim for attorney's fees. The Commissioner's motion to dismiss the appeal as moot is accordingly denied.
 
 
 
 [1]
 The Eleventh Amendment provides:
 The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
 U.S.Const. amend. XI.