Melvin ESTES–EL, Plaintiff,

v.

TOWN OF INDIAN LAKE, Trooper Guy Owen Howard, Judge Barry J. Hutchins, New York State Police, John Does 1–5 and Jane Does 1–5, Defendants.

96–CV–1896.

United States District Court,
N.D. New York.

Feb. 4, 1997.

Melvin Estes–El, Jamaica, NY, pro se.

Fitzgerald Morris Baker Firth P.C., Glens Falls, NY, for Defendants Town of Indian Lake and Judge Barry J. Hutchins; Robert P. McNally, of counsel.

Dennis C. Vacco, Attorney General of the State of New York, New York City, for Defendants New York State Police and Trooper Guy Owen Howard; Michael Melkonian, of counsel.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Senior District Judge.

### INTRODUCTION

Plaintiff originally filed his complaint in the United States District Court for the Southern District of New York ("Southern District").[1] Upon motion by Defendants Town of Indian Lake ("Town") and Judge Barry J. Hutchins, Judge Cedarbaum transferred the case to this court pursuant to 28 U.S.C. § 1406(a) because venue was improper in the Southern District.

Presently before the court are motions filed on behalf of all of the parties to this action. Defendants Town and Judge Hutchins move to dismiss and/or for summary judgment on two grounds. First, they contend that the claims against Judge Hutchins should be dismissed on the ground of absolute judicial immunity. Second, they assert

that the complaint should be dismissed against the Town because the Town has absolute immunity and because the Town is not responsible for the acts of its judicial officers. In the alternative, they seek summary judgment with respect to the claims against the Town.

Defendant State of New York moves to dismiss the complaint against the New York State Police on the ground that the Eleventh Amendment bars plaintiff's action. In addition, State Trooper Howard has requested, although not by formal motion, an extension of time in which to file an answer to plaintiff's complaint.

Rather than submit papers in opposition to defendants' motions, plaintiff moves to strike the answer of the Town and Judge Hutchins and for summary judgment against these defendants. In addition, he moves to dismiss the motion of the New York State Police and State Trooper Howard and for summary judgment against these defendants.

On January 23, 1997, the court received a letter from Mr. McNally on behalf of the Town and Judge Hutchins complaining about the lateness of Mr. Estes–El's motions and requesting that the court not consider them. *See* McNally Letter dated January 20, 1997, at 1. In the alternative, Mr. McNally asks that if the court considers plaintiff's motions, it accept his letter as his opposition to the same. *See id.*

On January 23, 1997, the court also received a letter from Mr. Estes–El. In that letter, Mr. Estes–El states that he will appear in court on January 27, 1997, as instructed; but he also asks that the court grant him an extension of twenty days in which to respond to the Town's and Judge Hutchins' motion. *See* Estes–El letter dated January 22, 1997, at 1. In support of this request, Mr. Estes–El asserts that he cannot properly respond to these motions until defendants' attorneys respond to his request for "[a] notice from the defendant and defendants' attorneys of record, that he [the defendants' attorney] has been authorized by

---

1. In addition to the named defendants, plaintiff commenced this action against "John Does 1–5" and "Jane Does 1–5."

defendants to represent them in their unofficial capacity and in their official capacity." [2] *See id.* at 2 and attachments thereto. Mr. Estes–El then states that their replies "[w]ould eliminate the need to make a motion before the court to determine if there is a conflict of interest as stated in the case of Monell vs Department of Social Services." *See id.* at 2. Mr. Estes–El explains that he also is asking for a stay because he has not received discovery material which he has requested "[t]hat would expedite this court's business and help to bring this court case to a close." *See id.*

Finally, Mr. Estes–El asserts that he is concerned about a "petition for writ of review (certiorari), request for temporary stay" which he filed in the Southern District prior to the transfer of this case to this court. *See id.* at 3. Mr. Estes–El contends that "[t]his writ is critical to prevent the defendants from carrying on and going forward with their illegal actions and unconstitutional actions and civil rights violations and due process violations as stated in the writ." *See id.* With respect to this last concern, Mr. Estes–El appears to be under the mistaken impression that Judge Cedarbaum did not consider his petition. To the contrary, in a Memorandum Opinion and Order dated October 31, 1996, Judge Cedarbaum denied Mr. Estes–El's "petition for review and request for a temporary stay." [3] *See* Order of Judge Cedarbaum dated October 31, 1996. Therefore, no further action is required with respect to plaintiff's petition.

On January 27, 1997, the court heard oral argument in support of, and in opposition to, these motions. At that time, the court reserved decision and informed the parties that a written decision would be forthcoming. The following constitutes the court's disposition of these motions.

**2.** Mr. Estes–El sent identical letters to Mr. McNally and to Mr. Melkonian.

**3.** There is a notation on the first page of Judge Cedarbaum's decision to the effect that copies of this order were mailed by certified and regular mail to Mr. Estes–El. *See* Order of Judge Cedarbaum dated October 31, 1996, at 1.

## BACKGROUND

Plaintiff pro se, Melvin Estes–El, alleges violations of his constitutional rights under 42 U.S.C. § 1983 and a conspiracy to violate these rights under 42 U.S.C. § 1985.[4] In his complaint, plaintiff asserts six causes of action, five of them purport to state federal claims and the sixth is classified as a pendant state claim. Basically, plaintiff complains that defendants violated his rights which are protected by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. His sixth cause of action, the pendant state claim, alleges a number of violations of an unspecified source.

More specifically, in his first cause of action, plaintiff contends that defendants violated his Fourth Amendment rights when, without a legal warrant stating probable cause, they arrested him on June 29, 1996. *See* Plaintiff's Complaint at ¶ 29. In his second cause of action, plaintiff alleges that defendants violated his Sixth Amendment right to be informed of the nature and cause of the accusation against him and to be confronted with the accuser. *See id.* at ¶ 30. He also claims that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment when they restrained him in handcuffs; forced him to produce $500 in bail to gain his freedom from jail; caused him to be strip-searched and have his clothing and personal property taken away; and fed him only tea, bread and tomato soup during his twelve hours of incarceration. *See id.* at ¶ 31.

In his third cause of action, plaintiff contends that defendants violated his Fifth and Fourteenth Amendment right to due process when they kidnapped him and searched him without a warrant or probable cause and without his consent. *See id.* at ¶ 32. In his fourth cause of action, plaintiff alleges that defendants violated his right to life, liberty and the pursuit of happiness when they de-

**4.** Plaintiff also states that he brings this action pursuant to 42 U.S.C. §§ 1986 and 1988 and the Civil Rights Act of 1870. *See* Plaintiff's Complaint at ¶ 1.

nied him egress from the Town Hall and the jail; arrested him without a warrant; and chained and detained him in a cell for several hours without the inception of a riot, insurrection, or invasion and without probable cause. *See* Plaintiff's Complaint at ¶ 33.

In his fifth cause of action, plaintiff claims that the New York State Police failed to properly train and supervise its employees with regard to individual rights secured by the Constitution. *See id.* at ¶ 34. Finally, in his sixth cause of action plaintiff alleges that the Town has one or more contracts with the State Police, that Judge Hutchins incorrectly refused to accept documents that would have cleared plaintiff of the charges and ordered him to appear in court at a later date, and that the New York State Police and the Town violated their contracts on June 29, 1996, when they arrested, searched and jailed plaintiff without a warrant or a victim's complaint. *See id.* at ¶¶ 38–39.

## DISCUSSION

Relying upon the facts set forth in plaintiff's complaint as well as in Judge Hutchins' affidavit, it appears that the following events underlie plaintiff's claims. In the early morning of July 29, 1996, State Trooper Howard observed that Mr. Estes–El was operating his car with an obstructed license plate, a violation of New York Vehicle and Traffic Law § 402. Since this conduct constituted an infraction, State Trooper Howard stopped Mr. Estes–El and asked to see his license. In response to questions, Mr. Estes–El admitted that he did not have a license issued either by New York or any other state. Therefore, State Trooper Howard arrested plaintiff for aggravated unlicensed operation in the third degree, a misdemeanor under N.Y. Veh. & Traf. Law § 511, and issued him two uniform traffic tickets, one for the infraction and one for the misdemeanor.

State Trooper Howard then contacted Judge Hutchins, Town Justice for the Town of Indian Lake, to arraign plaintiff on the infraction and the misdemeanor. The arraignment, held at approximately 2 a.m., was attended only by plaintiff, Judge Hutchins, and two New York State Troopers. Judge Hutchins gave copies of the two tickets to plaintiff which he took under protest. Plaintiff entered a plea of not guilty. Judge Hutchins set the bail on the misdemeanor at $500 and rescheduled the matter for an appearance on August 8, 1996. He then remanded plaintiff to the custody of the Hamilton County sheriff where he was jailed for twelve hours at the Hamilton County Jail in Lake Pleasant, New York. Plaintiff was released upon making the bail the next morning.

According to Judge Hutchins' affidavit, plaintiff argued at the arraignment that the court had no jurisdiction over him, that the tickets had no merit, and that he should have an immediate probable cause hearing. Judge Hutchins told plaintiff that he would schedule the matter for an appearance so that Mr. Estes–El could make his motions at that time. Judge Hutchins also told plaintiff that he could apply for the appointment of counsel on the misdemeanor if he could not afford one.[5]

On August 8, 1996, plaintiff appeared before Judge Hutchins and submitted papers containing arguments similar to those he had made at his arraignment. He had not served these papers on the court or the District Attorney until that evening. Therefore, Judge Hutchins adjourned the matter until October 10, 1996, and instructed plaintiff to serve any papers he had on the District Attorney. At that time, the District Attorney announced his readiness for trial.

By letter dated October 3, 1996, the District Attorney informed the court that he was presenting the matter to the grand jury on October 22, 1996, in accordance with New York Criminal Procedure Law § 170.20.[6]

---

5. In his complaint, plaintiff asserts that he was denied access to a telephone to call an attorney and that neither the Officer nor Judge Hutchins furnished him with an attorney when he requested to have one present. *See* Plaintiff's Complaint at ¶ 18.

6. New York Criminal Procedure Law § 170.20 provides, in pertinent part,

[a]t any time before entry of a plea of guilty to or commencement of a trial of an accusatory instrument specified in subdivision one, the district attorney may apply for an adjournment

Therefore, Judge Hutchins stayed the matter pending the application to the grand jury and a possible indictment pursuant to New York Criminal Procedure Law § 170.20(2). On October 8, 1996, the court advised plaintiff that he would not have to appear on October 10, 1996, because the matter had been adjourned. On October 22, 1996, the grand jury indicted plaintiff on the misdemeanor charge of aggravated unlicensed operation in the third degree. Plaintiff was to be arraigned on November 1, 1996, in Hamilton County Court. At this point, Judge Hutchins was divested of jurisdiction over the matter pursuant to New York Criminal Procedure Law § 170.20(1).[7]

With these facts in mind, the court will consider each of the issues raised by the present motions *seriatim*.

## I. Section 1985 Conspiracy

In his complaint, plaintiff does not specify upon which of § 1985's subdivisions he is relying. Reading liberally the allegations in the complaint, however, the only possible basis for plaintiff's claims under that statute is subdivision three, which in essence proscribes conspiracies to deprive a person of equal protection of the laws or of equal privileges and immunities under the laws.[8] *See Mian v. Donaldson, Lufkin & Jenrette Sec.,* 7 F.3d 1085, 1087 (2d Cir.1993) (citing *United Bhd. of Carpenters, Local 610 v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983)). Thus, in determining whether plaintiff has stated a cognizable claim under § 1985, the court assumes that he is relying upon subdivision three of that statute.

It is difficult to determine the exact parameters of plaintiff's § 1985 conspiracy claim. In his complaint, he alleges only that each of the officers' and officials' acts "under 'color' of state law is in direct violation of their oath of office and equates to criminal conspiracy under Section 1985." *See* Plaintiff's Complaint at Introduction. He also contends that the Town created a policy or custom "[t]o act in a conspiracy with the other Defendants herein to violate Plaintiff's rights." *See id.* at ¶ 26.

The Second Circuit has enumerated the following four elements of a section 1985(3) claim: " '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.' " *Lynch C.O. v. Slayton,* No. 95–CV–856, 1996 WL 31314, *5 (N.D.N.Y. Jan. 23, 1996) (quoting *Mian,* 7 F.3d at 1087). In addition to these elements just enumerated, there also must be a showing that the conspiracy was " 'motivated by "some racial or perhaps otherwise class-based, invidious

---

of the proceedings in the local criminal court upon the ground that he intends to present the misdemeanor charge in question to a grand jury with a view to prosecuting it by indictment in a superior court. In such case, the local criminal court must adjourn the proceedings to a date which affords the district attorney reasonable opportunity to pursue such action, and may subsequently grant such further adjournments for that purpose as are reasonable under the circumstances. Following the granting of such adjournment or adjournments, the proceedings must be as follows: (a) If such charge is presented to a grand jury within the designated period and either an indictment or a dismissal of such charge results, the local criminal court is thereby divested of jurisdiction of such charge, and all proceedings in the local criminal court with respect thereto are terminated.
N.Y.Crim.Proc.Law § 170.20(2) (McKinney 1993).

7. New York Criminal Procedure Law § 170.20(1) provides that

[i]f at any time before entry of a plea of guilty to or commencement of a trial of a local criminal court accusatory instrument containing a charge of misdemeanor, an indictment charging the defendant with such misdemeanor is filed in a superior court, the local criminal court is thereby divested of jurisdiction of such misdemeanor charge and all proceedings therein with respect thereto are terminated.
N.Y.Crim.Proc.Law § 170.20(1) (McKinney 1993).

8. Section 1985(1) pertains to preventing officers of the United States from discharging their duties. Section 1985(2) addresses intimidation of federal witnesses as well as the obstruction of justice more generally. There are no allegations in plaintiff's complaint which would implicate these subdivisions of § 1985.

discriminatory animus behind the conspirators' action.'"" *Id.,* 1996 WL 31314, at *5 (quoting *Mian,* 7 F.3d at 1088 (quoting in turn *Scott,* 463 U.S. at 829, 103 S.Ct. at 3356)). Thus, "'[t]o state a claim [under section 1985(3)], plaintiff must first show that she is a member of a group protected under the statute.'" *Id.,* 1996 WL 31314, at *5 (quoting *Srubar v. Rudd, Rosenberg, Mitofsky & Hollender,* 875 F.Supp. 155, 162 (S.D.N.Y.1994) (citing in turn *Gleason v. McBride,* 869 F.2d 688, 694–695 (2d Cir. 1989))). "'When a plaintiff fails to establish membership in a protected group, a civil rights conspiracy complaint under 42 U.S.C. § 1985 may be dismissed.'" *Id.,* 1996 WL 31314, at *5 (quoting *Srubar,* 875 F.Supp. at 162 (citing in turn *Gleason,* 869 F.2d at 694–95)).

▌ Plaintiff's complaint is completely devoid of any allegations that he is a member of a protected class or that defendants acted with a race or class-based discriminatory animus. *See Lucas v. New York City,* 842 F.Supp. 101 (S.D.N.Y.1994) (the court held that plaintiff failed to state a claim under § 1985(3) because "[t]he complaint [was] devoid of any allegation of class-based, invidious discriminatory animus[.]"); *Carino v. Town of Deerfield,* 750 F.Supp. 1156 (N.D.N.Y.1990), *aff'd without pub'd opinion,* 940 F.2d 649 (2d Cir.1991) (court granted defendants' motion for summary judgment because plaintiffs "did not identif[y] the 'protected class' to which they allegedly belong[ed]; nor ha[d] they alleged that the defendants acted with a race or class-based discriminatory animus."). Furthermore, even if the complaint somehow could be construed as containing vague or conclusory allegations of invidious motivation (which it cannot), more would be required to survive defendants' motion to dismiss. *Lynch C.O.,* 1996 WL 31314, *5 (citing *Srubar,* 875 F.Supp. at 162). Therefore, in light of the foregoing, the court finds that plaintiff has failed to assert a viable claim under § 1985(3).

However, since Mr. Estes–El is appearing pro se, under *Mian,* the court must provide him with the opportunity to amend his complaint in this regard, unless, of course, such amendment would be futile.[9] Before considering the extent of such amendment, however, because it appears that there may be other problems with plaintiff's claims, the court will proceed to consider those before determining the parameters of any amendment.

## II. Judicial Immunity

Judge Hutchins argues that he is entitled to dismissal of the complaint as against him based upon the doctrine of judicial immunity. In this regard, Judge Hutchins asserts that his only involvement in the acts complained of was in his capacity as the Town Justice of the Town of Indian Lake. *See* Hutchins' and Town's Memorandum of Law at 1. In this capacity, he asserts that he is responsible for hearing and adjudging misdemeanors and infractions which occur in the Town. *See id.* He also argues that he had personal jurisdiction over Mr. Estes–El because plaintiff was taken into custody for violation of New York law in the presence of a State Trooper who issued tickets accusing plaintiff of violating New York Vehicle and Traffic Law §§ 402 and 511. *See id.* at 1–2.

▌ "'[A]bsolute immunity is appropriate for judges in the exercise of their judicial function.'" *Lynch C.O.,* 1996 WL 31314, at *8 (quoting *Tulloch v. Coughlin,* 50 F.3d 114, 116 (2d Cir.1995) (citing in turn, inter alia, *Pierson v. Ray,* 386 U.S. 547, 553–54, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1967))). This "'immunity confers complete protection from civil suit.'" *Id.,* 1996 WL 31314, at *8 (citing *Tulloch,* 50 F.3d at 116). Judges enjoy immunity from personal liability because without it they "'would be subject to harassment and intimidation and would thus "lose" that independence without which no judiciary can either be respectable or useful.'" *Id.,* 1996 WL 31314, at *8 (quoting *Young v. Selsky,* 41 F.3d 47, 51 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1837,

---

9. In *Mian,* the Second Circuit held that because civil rights complaints of pro se litigants should be liberally construed, the district court had

erred in dismissing plaintiff's complaint with prejudice without giving him an opportunity to amend his complaint. *Mian,* 7 F.3d at 1088.

131 L.Ed.2d 756 (1995) (quoting in turn *Butz v. Economou,* 438 U.S. 478, 509, 98 S.Ct. 2894, 2912, 57 L.Ed.2d 895 (1978) (quoting in turn *Bradley v. Fisher,* 13 Wall. 335, 347, 20 L.Ed. 646 (1871)))).

So expansive is judicial immunity that it " 'applies 'however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff.' " *Lynch C.O.,* 1996 WL 31314, at *8 (quoting *Young,* 41 F.3d at 51 (quoting in turn *Cleavinger v. Saxner,* 474 U.S. 193, 199–200, 106 S.Ct. 496, 499, 88 L.Ed.2d 507 (1985) (quoting in turn *Bradley,* 13 Wall. at 347))). Just how broad this immunity sweeps is demonstrated by the Supreme Court's decision in *Mireles v. Waco,* 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). In *Mireles,* the Court held that judicial immunity is overcome in only two sets of circumstances: (1) when the action is nonjudicial; i.e., not taken in the judge's judicial capacity; or (2) when the action, although judicial in nature, is taken in the complete absence of all jurisdiction. *Ferran v. State of New York Div. of State Police,* No. 91–CV–178, 1992 WL 1694, *3 (N.D.N.Y. Jan. 2, 1992) (citing *Mireles,* 502 U.S. at 11, 112 S.Ct. at 288, 116 L.Ed.2d at 13 (internal citations omitted)).

"To determine whether an action is 'judicial,' the [*Mireles* ] Court reiterated the test set forth in *Stump v. Sparkman* that the analysis relates ' "to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." ' " *Ferran,* 1992 WL 1694, at *3 (quoting *Mireles,* 502 U.S. at 12, 112 S.Ct. at 288, 116 L.Ed.2d at 14 (quoting in turn *Stump v. Sparkman,* 435 U.S. 349, 362, 98 S.Ct. 1099, 1107, 55 L.Ed.2d 331 (1978))). The *Mireles* Court went on to note that "[t]he analysis is of the nature of the act in question, not the specific act, because 'if only the particular act in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a "nonjudicial" act.... If judicial immunity means anything, it means that a judge "will not be deprived of immunity because the action he took was in error ... or was in excess of his authority." ' "

*Ferran,* 1992 WL 1694, at *3 (quoting *Mireles,* 502 U.S. at 13, 112 S.Ct. at 288, 116 L.Ed.2d at 15 (quoting in turn *Stump,* 435 U.S. at 356, 98 S.Ct. at 1104)) (other citation omitted).

■ An examination of the allegations in plaintiff's complaint that pertain to Judge Hutchins reveals that neither of these exceptions to judicial immunity is present in this case. Other than the conclusory allegation that all defendants were acting outside the scope of their employment, plaintiff nowhere states that Judge Hutchins was acting in other than a judicial capacity. He claims only that what Judge Hutchins did in that capacity was in error. Given the Supreme Court's holding in *Mireles,* such allegations are insufficient to circumvent Judge Hutchins' judicial immunity defense based upon nonjudicial actions.

Mr. Estes–El also claims that Judge Hutchins lacked jurisdiction over his case. The basis for this assertion is plaintiff's contention that

> Trooper Howard and Judge Hutchins at no time during the arrest and the jailing of the Plaintiff had any documents filed by the District Attorney's office to start the legal process to give the Court jurisdiction to hear the case. Therefore the Court of Indian Lake has violated the Plaintiff's right to due process and has tried to assume jurisdiction by arresting and jailing the Plaintiff without the District Attorney's Complaint and affidavit in support of his Complaint.

*See* Plaintiff's Complaint at ¶ 8.

Plaintiff's arguments that Judge Hutchins lacked jurisdiction over him are without merit. First, there is no dispute that the incidents which form the basis of plaintiff's complaint occurred within the Town of Indian Lake, the geographical area over which Judge Hutchins has jurisdiction. Moreover, by statute, a town court, like the one over which Judge Hutchins presides, is one of the criminal courts of this state. N.Y.Crim.Proc. Law § 10.10 (McKinney 1992). As such, it has "[p]reliminary jurisdiction of all offenses subject to divestiture thereof in any particular case by the superior courts and their grand juries." N.Y.Crim.Proc.Law

§ 10.30(2) (McKinney 1992). In addition, a local criminal court, which includes a town court, also has trial jurisdiction of all offenses other than felonies. N.Y.Crim.Proc.Law § 10.30(1) (McKinney 1992). Such courts also have exclusive trial jurisdiction over petty offenses, with exceptions not relevant here, and concurrent trial jurisdiction of misdemeanors with superior courts. N.Y.Crim. Proc.Law § 10.30(1) (McKinney 1992).

With respect to plaintiff's claim that the court lacked jurisdiction because the District Attorney had not issued a complaint, New York Criminal Procedure Law § 100.10 forecloses this argument. Pursuant to that statute, entitled "Local criminal court accusatory instruments; definitions thereof,"

> 2. (a) A **"simplified traffic information"** is a written accusation by a police officer, or other public servant authorized by law to issue same, filed with a local criminal court, which charges a person with the commission of one or more traffic infractions and/or misdemeanors relating to traffic, and which, being in a brief or simplified form prescribed by the commissioner of motor vehicles, designates the offense or offenses charged but contains no factual allegations of an evidentiary nature supporting such charge or charges. It **serves as a basis for commencement of a criminal action for such traffic offenses, alternative to the charging thereof by a regular information, and,** under circumstances prescribed in section 100.25, it may serve, either in whole or in part, as a basis for prosecution of such charges.

N.Y.Crim.Proc.Law § 100.10(2)(a) (McKinney 1992) (emphasis added).

Despite plaintiff's contentions to the contrary, it is clear from the above-cited statutes that Judge Hutchins had jurisdiction over plaintiff's case. Therefore, plaintiff Estes–El cannot avail himself of the second exception to judicial immunity. Finally, it should be noted that plaintiff's vague and conclusory allegations of a conspiracy between Judge Hutchins and State Trooper Howard, even if alleged in more detail, also would be barred by judicial immunity. *Lynch C.O.,* 1996 WL 31314, at *9 (citing *Schiff v. Dorsey,* 877 F.Supp. 73, 76 (D.Conn.1994)). Accordingly, Mr. Estes–El's action seeking monetary damages against Judge Hutchins is barred by the doctrine of judicial immunity.

This, however, does not end the court's inquiry. Although the doctrine of judicial immunity provides that a judge is not liable for damages for acts performed in the exercise of her judicial function, judicial immunity does not bar actions seeking prospective injunctive relief against judicial officers. *Levy v. Lerner,* 853 F.Supp. 636, 640 (E.D.N.Y. 1994), *aff'd without pub'd opinion,* 52 F.3d 312 (2d Cir.1995) (citing *Pulliam v. Allen,* 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984); *Blake v. Costantino,* 710 F.Supp. 450, 451 (E.D.N.Y.1989)); *Lynch C.O.,* 1996 WL 31314, at *9. Nor does judicial immunity bar actions seeking declaratory relief. *Mathis v. Clerk of First Dep't, Appellate Div.,* 631 F.Supp. 232, 235 (S.D.N.Y.1986) (citing *Heimbach v. Village of Lyons,* 597 F.2d 344, 347 (2d Cir.1979); *Person v. Ass'n of Bar of City of New York,* 554 F.2d 534, 537 (2d Cir.1977)) (other citation omitted).

In the present case, plaintiff seeks compensatory and punitive damages as well as declaratory and injunctive relief. In terms of this latter equitable relief, he seeks the following:

> A Declaratory judgment that the actions of Defendant Howard et, al., on June 29, 1996 constituted unprovoked assault and unlawful detention, and unlawful arrest; a declaratory judgment that the actions of Defendant officers and officials on June 29, 1996 constituted kidnapping and unlawful arrest, unlawful search and seizure of personal property in violation of the United States Constitution's Fourth, Fifth and Fourteenth Amendments.
>
> A declaratory judgment that to deny Plaintiff the right to be informed of the nature of the cause of the accusation and to be confronted with the witnesses against him is a direct violation of the Sixth Amendment to the United States Constitution. A declaratory judgment that to jail and detain Plaintiff for several hours deprived Plaintiff of his right to be free from cruel and usual [sic] punishment of Defendant's unreasonable actions of restraining Plaintiff in cuffs, causing Plaintiff pain and

suffering, amounts to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution, . : .

Because there's a controversy about illegal arrest and rights violation, I ask this Court to intervene and grant injunctive relief to stop this illegal action of the State Trooper and Town Justice of Indian Lake until this case can be decided by the Federal Court.

*See* Plaintiff's Complaint, WHEREFORE clause at ¶¶ a, b, c, j.

Even reading plaintiff's complaint very broadly as this court must, it does not appear that the declaratory relief plaintiff seeks involves his claims against Judge Hutchins. Nor does his request for injunctive relief involve Judge Hutchins because since the grand jury indicted Mr. Estes–El on the misdemeanor charge, Judge Hutchins no longer has jurisdiction over the matter. Given that the declaratory and injunctive relief plaintiff seeks has no bearing on plaintiff's claims against Judge Hutchins, there appears to be no impediment to dismissing the complaint against him. Accordingly, the court grants Judge Hutchins' motion to dismiss the complaint as it relates to him on the ground of judicial immunity.

### III. Town's Motion to Dismiss or for Summary Judgment

The basis for the Town's motion to dismiss or for summary judgment is two-fold. First, the Town argues that the complaint should be dismissed because the Town has absolute immunity. *See* Hutchins' and Town's Memorandum of Law at 2. Second, the Town asserts that the complaint should be dismissed because the only Town employee who had any involvement in the acts complained of is Judge Hutchins and a Town is never liable for the acts of its judicial officers. *See id.*

The first of these arguments is clearly without merit. Addressing this same issue, the Second Circuit held that "[t]here is no immunity defense, either qualified or absolute, available to a municipality sought to be held liable under 42 U.S.C. § 1983."

*Goldberg v. Town of Rocky Hill,* 973 F.2d 70, 74 (2d Cir.1992).

With respect to the Town's second argument—that it is not responsible for the acts of its judicial officers—the court's analysis is governed by the Supreme Court's decisions in *Monell v. New York City Dep't of Social Svcs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and its progeny. In *Monell,* the Court determined that a municipality could be held liable for the acts of its employees only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury ..." *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037. In other words, there is no *respondeat superior* liability under § 1983. *See Monell,* 436 U.S. at 694, 98 S.Ct. at 2037.

In *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), the Court further defined the principles governing liability of a municipality under § 1983 observing:

> First, ... municipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, 'that is, acts which the municipality has officially sanctioned or ordered.' Second, only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability. Third, whether a particular official has 'final policymaking authority' is a question of *state law.* Fourth, the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in *that area* of the City's business.

*Id.,* 485 U.S. at 123, 108 S.Ct. at 924, 99 L.Ed.2d at 118 (quoting Justice Brennan's plurality opinion in *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 482–83 & n. 12, 106 S.Ct. 1292, 1298–99, 1300 & n. 12, 89 L.Ed.2d 452 (1986) (citations omitted)) (emphasis in original).

The Second Circuit has not directly addressed the issue of whether a municipality can be held liable for the acts of its judicial officers for purposes of § 1983. However, its

recent decision in *Warner v. Orange County Dep't of Probation,* No. 1760, 1996 WL 507172 (2d Cir. Sept. 9, 1996), provides some insight into what the court's decision might be if it were presented with this issue. In *Warner,* the court addressed whether or not Orange County was entitled to absolute quasi-judicial immunity for the acts of its Probation Department. The court held that no such quasi-judicial absolute prosecutorial immunity existed.

However, in a rather lengthy footnote, the court stated that "[w]e do not imply that we would rule similarly where the asserted liability of the municipality derives from the conduct of a judge." *Warner,* 1996 WL 507172, at *8 n. 7. The court explained that "[i]t is difficult to say that a municipal judge has 'final authority to establish municipal policy' under state law at all, . . . as such rulings are almost always, . . ., appealable to higher courts within the state. . . . 'Local' judicial decisions are therefore neither final, nor exclusively local." *Id.* (citing N.Y. Uniform Justice Court Act §§ 1701, 1702 (McKinney 1989)) (other citations omitted). The court went on to state that "[w]hen a municipal judge enforces state law he does not act as a municipal official or lawmaker, but rather serves only to effectuate state policies." *Id.* (citations omitted). Finally, the court noted that this conclusion was supported by the fact that "New York municipal courts are 'part of the unified court system for the state. . . .'" *Id.* (citing N.Y. Uniform Justice Court Act § 102 (McKinney 1989)).

■ Given the Supreme Court's pronouncements on municipal liability and the Second Circuit's dicta in *Warner,* this court is convinced that Judge Hutchins is not a policymaker for the Town of Indian Lake. This conclusion is supported by the fact that the jurisdiction of his court as well as the requirements of his job are prescribed by state law. Moreover, his decisions are not final because they are appealable to higher courts within the state court system. Therefore, the court concludes that the Town is not responsible for Judge Hutchins' conduct

when he acts in his judicial capacity, as he did in the present case. Accordingly, the court grants the Town of Indian Lake's motion for summary judgment with respect to plaintiff's claims against the Town.

## IV. Eleventh Amendment Immunity

The State of New York moves to dismiss plaintiff's complaint against the New York State Police on the ground that the Eleventh Amendment bars this suit against it.[10]

■ As the Second Circuit recently has confirmed, "[a]s a general matter, the Eleventh Amendment bars suits of any sort against a state in federal court unless the state has consented to be sued or Congress has expressly abrogated the state's immunity." *Kostok v. Thomas,* 105 F.3d 65 (2d Cir.1997). New York has not consented to be sued in federal court. *Levy v. Lerner,* 853 F.Supp. 636, 640 (E.D.N.Y.1994) (citing *Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 39–40 (2d Cir.1977)). Nor did Congress override Eleventh Amendment immunity in enacting § 1983. *Id.* (citing *Quern v. Jordan,* 440 U.S. 332, 345, 99 S.Ct. 1139, 1147, 59 L.Ed.2d 358 (1979)). Therefore, Mr. Estes–El may not maintain his action against the New York State Police. This, however, does not end the court's inquiry.

If an act by a state violates the federal Constitution or a federal law, then the state officer loses official immunity: "'[t]he state has no power to impart to him any immunity from responsibility to the supreme authority of the United States.'" *Kostok,* 105 F.3d at 68 (quoting *Ex parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 453–54, 52 L.Ed. 714 (1908)) (other citation omitted). However, although the Eleventh Amendment does not bar such a suit, the range of available remedies is limited. *See Kostok,* 105 F.3d at 69. "Any claim for retroactive monetary relief, under any name, is barred." *Id.* (citing *United States v. Yonkers Bd. of Educ.,* 893 F.2d 498, 503 (2d Cir.1990); *County of Oneida v. Oneida Indian Nation,* 470 U.S. 226, 251–52, 105 S.Ct. 1245, 84 L.Ed.2d 169

**10.** Although the State of New York specifically seeks this relief only with respect to the New York State Police, given the nature of Eleventh Amendment immunity, the court will analyze this defense as it pertains to both the New York State Police and State Trooper Howard.

(1985)). "When state funds are awarded to compensate for past wrongdoing by state officials, or to deter future wrongdoing, the Eleventh Amendment bars the payment as retrospective." *Id.* (citing *Edelman v. Jordan*, 415 U.S. 651, 668–69, 677, 94 S.Ct. 1347, 1358–59, 1362, 39 L.Ed.2d 662 (1974); *Green v. Mansour*, 474 U.S. at 68, 106 S.Ct. at 425). However, "[a] federal court may grant prospective injunctive relief ... to stop or prevent acts that are illegal under federal law." *Id.* (citing *Edelman*, 415 U.S. at 677, 94 S.Ct. at 1362).

■ In the present case, plaintiff has sued the New York State Police as well as State Trooper Guy Owen Howard, in both his official and individual capacities. Moreover, plaintiff seeks monetary damages as well as injunctive and declaratory relief from these defendants. With respect to the claims for monetary damages, it is clear that the Eleventh Amendment bars this suit against both the New York State Police and State Trooper Howard in his official capacity. It does not, however, affect plaintiff's suit for damages against State Trooper Howard in his individual capacity. Nor does the Eleventh Amendment require dismissal of plaintiff's complaint against State Trooper Howard in his official capacity with respect to plaintiff's claims for declaratory and injunctive relief. Accordingly, the court grants the State's motion to dismiss plaintiff's complaint against the New York State Police and State Trooper Howard in his official capacity with respect to the claims seeking money damages on the ground of Eleventh Amendment immunity. The court, however, denies the State's motion to dismiss plaintiff's claims for money damages against State Trooper Howard in his individual capacity and its motion to dismiss plaintiff's claims for declaratory and injunctive relief against State Trooper Howard in his official capacity.

### V. Plaintiff's Motions

Plaintiff has filed a number of motions with respect to the defendants. First of all, with respect to the Town and Judge Hutch-ins, plaintiff moves to strike their answer and for summary judgment on the pleadings. Second, with respect to the New York State Police and State Trooper Howard, he moves to strike their motion to dismiss and for summary judgment on the pleadings. These motions need not detain the court for long.

First of all, because the court has granted the Town's motion for summary judgment and Judge Hutchins' motion to dismiss, plaintiff's motions against them are moot. Moreover, even if the court were to consider the merits of plaintiff's motion, it is clear that there is no legal basis to support his arguments. Despite his assertions to the contrary, the answer filed on behalf of the Town and Judge Hutchins is in compliance with the federal rules and there is, therefore, no sound reason to strike the same. *See* Fed. R.Civ.P. 8. Accordingly, the court denies plaintiff's motion to strike the Town's and Judge Hutchins' answer.

Plaintiff's motion for summary judgment rests upon a finding that the answer is insufficient and, thus, there are no issues of genuine fact in dispute. Since the court has found the answer to be sufficient and, in fact, has dismissed plaintiff's complaint against both of these defendants, this motion is moot. Accordingly, the court denies plaintiff's motion for summary judgment with respect to these defendants.

Plaintiff also has moved to strike the motion to dismiss filed on behalf of the New York State Police and State Trooper Howard. The basis for this motion is plaintiff's assertion that having not filed an answer, these defendants are in default and, thus, they are liable to him. Setting aside for a moment the procedural problems with this argument,[11] suffice it to say that defendants filed a motion for a change of venue and a motion to dismiss on the ground of the Eleventh Amendment immunity in lieu of an answer, as they are permitted to do under the federal rules. *See* Fed.R.Civ.P. 12. Accordingly, the court denies plaintiff's motion to strike defendants' motion to dismiss.

---

11. In order for the court to find that defendants are in default, plaintiff would have had to ask the Clerk of the Court to enter default against them and then would have had to move for a default judgment. He has taken neither of these steps. *See* Fed.R.Civ.P. 55.

■ Finally, plaintiff moves for summary judgment against the New York State Police and State Trooper Howard on the ground that since they have not answered his complaint there are no genuine issues of material fact in dispute which would preclude the court from granting his motion. As noted above, the defendants timely filed motions in lieu of an answer; and the court has granted their motion in part. With respect to that part of the complaint which the court did not dismiss, summary judgment at this stage of the litigation would be premature in light of the fact that State Trooper Howard has not as yet filed an answer to plaintiff's complaint. Accordingly, the court denies plaintiff's motion for summary judgment with respect to the New York State Police and State Trooper Howard.

## CONCLUSION

For the reasons stated above, the court **GRANTS** Judge Hutchins' motion to dismiss and the Town of Indian Lake's motion for summary judgment. Likewise, the court **GRANTS** New York State's motion to dismiss the complaint against the New York State Police and Trooper Howard's motion to dismiss the claims for money damages against him in his official capacity. The court, however, **DENIES** Trooper Howard's motion to dismiss the complaint against him in his individual capacity and his motion to dismiss those claims seeking injunctive and declaratory relief against him in his official capacity. In addition, the court **DENIES** plaintiff's motions in their entirety. Finally, the court notes that because Trooper Howard is the only remaining defendant in this case, it would be futile to allow plaintiff to amend his complaint with respect to his § 1985(3) conspiracy claim. Therefore, the court **DISMISSES** this claim against all defendants.

In light of these conclusions, the court instructs State Trooper Howard to file an answer to plaintiff's complaint on or before February 24, 1997.

**IT IS SO ORDERED.**