OPINION OF THE COURT
Per Curiam.
Petitioner, a Justice of the Supreme Court, Kings County, seeks review of a determination of the State Commission on Judicial Conduct sustaining one of two charges of misconduct against him and censuring him (NY Const, art VI, § 22; Judiciary Law § 44). The Commission determined that petitioner failed to maintain standards of conduct so as to preserve the integrity of the judiciary (22 NYCRR 100.1); failed to avoid impropriety and the appearance of impropriety and to conduct himself at all times in a manner that promotes public confidence in the integrity of the judiciary (22 NYCRR 100.2); and failed to be patient, dignified and courteous with individuals with whom he dealt in an official capacity (22 NYCRR 100.3 [B] [3]).
After an evidentiary hearing, submissions by the parties and oral argument, the Commission determined that petitioner engaged in “inappropriate and demeaning” conduct toward his secretary, Jacqueline Bland. Specifically, the Commission concluded that petitioner made numerous comments to Bland of a sexual nature, repeatedly touched her without her invitation or consent and, on one occasion, pulled her onto his lap and kissed her mouth without her invitation or consent. The Commission determined that because petitioner was 76 years old and was leaving office at the end of 1999, he should be censured rather than removed from office.
Petitioner maintains that Bland, with the aid of her friend and co-worker, Caroline Rucker, fabricated the allegations against him after he reprimanded her for poor work habits. He asserts that the Commission ignored both the testimony of his law clerk and 14 character witnesses. Moreover, petitioner argues that the Referee improperly allowed Bland to testify that she had told “many other people” about petitioner’s harassment without requiring her to identify and produce those people to corroborate her story. Pursuant to our plenary review of the record, and upon our evaluation of the *10 Commission’s findings and conclusions, we hold that charge I was established by evidence in the record and petitioner’s misconduct warrants censure.
Bland testified that on numerous occasions during her employment, petitioner made inappropriate remarks to her about her physical appearance, focusing on certain physical attributes and the way her clothing fit. In addition, petitioner also asked her details about her sex life with her husband and, after her divorce, told her she “should be dating, I should be seeing other men, that I should be having sex, and I should be having sex with him.”
Bland also testified that petitioner inappropriately touched her numerous times without her consent. She testified that just prior to Thanksgiving 1985, petitioner
“told me to come into his chambers and he wanted to show me something, and to come around over his shoulder. * * * [H]e pulled me on his lap and he said that I should be * * * comfortable, that I spend a majority of my time here, and then he kissed me and he put his tongue in my mouth.”
Part of Bland’s testimony was corroborated by Rucker, who reported certain inappropriate comments regarding Bland’s physical attributes made by petitioner when she, Bland and petitioner were looking at Bland’s wedding photographs.
Petitioner, testifying on his own behalf, denied the allegations, stating that they were false and in retaliation for his having disciplined Bland. Petitioner’s law clerk also testified that during the eight years he worked in petitioner’s chambers he never saw Bland emerge from petitioner’s office upset or angry, except on the one occasion in which she was disciplined. Finally, 14 character witnesses — many of whom were women who worked with petitioner — took the stand and testified as to petitioner’s strong moral character and excellent reputation in the court system.
The Referee determined that Bland was telling the truth and that petitioner was not. The Commission adopted the Referee’s credibility determination and we find no basis to disturb it (see, Matter of Mulroy, 94 NY2d 652, 656; Matter of Assini, 94 NY2d 26, 29).
On February 21, 2000, approximately three and a half months after the Commission made its determination, peti-
*11 tioner moved to “renew/reconsider” it.[1] He based his application on an affidavit from a woman named Shelley Williams dated January 14, 2000. Williams, a former roommate of Rucker, averred that, prior to testifying before the Referee, Rucker told her that she (Rucker) and Bland planned to lodge false accusations against petitioner. On March 7, 2000, the Commission’s Deputy Counsel interviewed Williams on the record with Williams’ counsel present. Deputy Counsel then opposed petitioner’s motion asserting that Williams was not a credible witness as she had lied numerous times in the past. Deputy Counsel included Rucker’s March 12 affidavit, in which she denied Williams’ allegations. Rucker averred that she and Williams had been friends but, for reasons unrelated to this case, enmity developed between them and Williams had vowed to “get” Rucker.
Deputy Counsel also furnished the Commission with a transcript of his interview with Williams. That transcript is filled with repeated admissions, after recesses in which Williams consulted with her attorney, that earlier deposition testimony was false. It includes a bold assertion that Williams was associated with a “hit man” and that Rucker had sought Williams’ assistance in arranging for the murder of Rucker’s husband and another Judge.
In light of Williams’ bizarre and inconsistent testimony, the Commission, not surprisingly, determined on April 6, 2000 that the new evidence did “not create a reasonable possibility or a probability that [the] Determination would be altered.” Petitioner sought review of that determination before this Court. By decision dated June 20, 2000, we unanimously dismissed, sua sponte, the request for review on the ground that
“the Court of Appeals does not have jurisdiction to entertain a request for review of such a determination (see, Matter of Lenney, 70 NY2d 863; NY Const, art VI, § 22; Judiciary Law § 44)” (Matter of Shaw, 95 NY2d 823).
On the review of the determination before us, petitioner now asks that we remand the case to the Commission, arguing *12 again that Williams’ newly discovered exculpatory testimony should be heard firsthand by the Referee or the Commission.[2]
The New York State Constitution, Judiciary Law, and our precedents lead to the inescapable conclusion that this Court is limited to reviewing the Commission’s determination of censure on the record as it was before the Commission at the time of the original determination. As the June 20, 2000 dismissal reflects, the reconsideration determination is nonreviewable. Thus, the additional evidence sought to be introduced on reconsideration cannot now be considered by this Court in its review of the original determination.
Article VI, § 22 (a) and (d) of the New York State Constitution mandates the conclusion of limited review. Subdivision (a) states that “[t]he commission on judicial conduct shall * * * investigate and hear complaints * * * and, in accordance with subdivision d of this section, may determine that a judge or justice be admonished, censured or removed * * * The commission shall transmit any such determination to the chief judge of the court of appeals * * *. Such judge or justice may either accept the commission’s determination or make written request * * * for a review of such determination” (emphasis added). Subdivision (d) provides that “[i]n reviewing a determination of the commission * * * the court of appeals may admonish, censure, remove or retire * * * any judge * * *. In reviewing a determination of the 0commission * * * the court of appeals shall review the commission’s findings of fact and conclusions of law on the record of the proceedings upon which the commission’s determination was based” (emphasis added).
The Judiciary Law mirrors these limited review provisions. Section 44 (1) provides that the “commission * * * may determine that a judge be admonished, censured or removed.” Section 44 (7) states that “[a]fter a hearing, the commission may determine that a judge be admonished, censured, removed or retired. The commission shall transmit its written determination, together with its findings of fact and conclusions of law and the record of the proceedings upon which its determination is based, to the chief judge of the court of appeals.” (Emphasis added.) Section 44 (9) reiterates that “[i]n its review of a determination of the commission, the court of appeals shall review the commission’s findings of fact and conclusions of law on the *13 record of the proceedings upon which the commission’s determination was based. After such review, the court may accept or reject the determined sanction.” (Emphasis added.)
The references in the Constitution and the Judiciary Law to the word “determination” consistently refer to an original determination of admonishment, censure or removal by the Commission. The language is crystal clear that this Court is only empowered to review an admonishment, censure or removal determination. The phrase “on the record of the proceedings upon which the commission’s determination was based” unequivocally refers to the record as compiled before the Commission in connection with the initial sanction determination.[3]
Nothing in these provisions confers on this Court jurisdiction to entertain appeals from, or otherwise review, any other orders (such as a denial of a motion to renew or reconsider) issued by the Commission. Our precedents clearly support this view (see, Matter of LaBelle, 79 NY2d 350, 357, n 2; Matter of Le
The parties did gratuitously include the motion papers and the transcript of Williams’ deposition in the record for review of the Commission’s original determination. That act, however, does not abrogate our earlier jurisdictional decision, nor does it somehow expand the basis for the Commission’s original determination. The Constitution limits our subject matter jurisdiction in this regard; the parties are without authority to stipulate to bring the facts and circumstances of the reconsideration denial before us (see, e.g., Robinson v Oceanic Steam Nav. Co., 112 NY 315, 324). The dissent would ignore the determination of a court or quasi-judicial body presented with a motion to reconsider to reject the “newly discovered evidence” (see, e.g., CPL 440.30 [2], [4]; CPLR 5015 [a] [2]). Under the dissent’s analysis, simply considering the motion and its supporting affidavits makes the new “evidence” part of the original determination.
In essence, the dissenter is faced with an insurmountable dilemma arising out of the constitutional and statutory limitations on our powers in this proceeding — solely to review the Commission’s determination of guilt and sanction — as this Court recognized in its unanimous dismissal of petitioner’s prior review request. The nebulous due process claim petitioner *14 asserts here is indistinguishable from that asserted in the prior motion. There we correctly recognized our jurisdictional restrictions, and the dissent does not explain what has changed to enlarge our powers to review and change the Commission’s disposition of a motion to reconsider in the present procedural posture of this matter.
Accordingly, the determined sanction should be accepted, without costs.

. Although petitioner’s motion was untimely, the Commission apparently waived its timeliness rule (see, Rules of Commission on Judicial Conduct [22 NYCRR] § 7000.6 [f] [6]).

. The remittal remedy is not within the powers conferred on us by the Constitution or the Judiciary Law (see, NY Const, art VI, § 22 [d]; Judiciary Law § 44 [9]).

. Had the Commission granted the motion to reconsider and then adhered to its original determination, that might be an entirely different matter. However, that is not the case before us.